# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| BENNY JEROME JACKSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case Number: |
| ) | 2:09-cv-0684-JHH-PWG |
| GRANT CULLIVER; ATTORNEY ) | |
| GENERAL OF THE STATE OF ALABAMA, ) | |
| ) | |
| Respondents. ) | |

## MEMORANDUM OPINION

Petitioner Benny Jerome Jackson ("Jackson") is an Alabama state prisoner serving a life sentence without the possibility of parole, imposed following his conviction at trial of robbery in the first degree. Jackson, now *pro se*, petitions for a writ of *habeas corpus* brought pursuant to 28 U.S.C. § 2254. (Doc.[1] 1 ("§ 2254 Pet.")). Upon consideration, Jackson's § 2254 is denied.

## I. BACKGROUND

On October 22, 2004, a grand jury in Jefferson County handed down an indictment against Jackson and charged him with first degree robbery of Rashawnda Carroll ("Carroll"), in violation of Alabama Code § 13A-8-41. (C.[2] 10). Jackson was separately indicted for the first degree robbery of Vien Le ("Le") and was charged with two other robberies. The robberies of Carroll (at a Shell

---

[1]/ Citations to "Doc(s). ___" are to the document number(s) assigned by the clerk of the court to the materials in the court file, as reflected on the docket sheet.

[2]/ Citations to "C. __" are to the page number in the Clerk's Record of the trial proceedings in the state court. The Clerk's Record is found at Doc. 5-1 through Doc. 5-3 and Doc. 5-5. Doc. 5-1 includes the index plus C.1 to C.49. Doc. 5-2 includes C.50 to C.79. Doc. 5-5 contained C. Supp. 1 to C. Supp. 12.

Service Station on June 27, 2004) and Le (at A&M Grocery Store on June 20, 2004) were consolidated for trial. Jackson was tried on these cases before a jury on March 28–29, 2005, with Jefferson County Circuit Judge Laura Petro presiding. The jury returned verdicts acquitting him of the charge of robbing Le but convicting him of first degree robbery of Carroll. (C. 3; R.[3] 137).

The court conducted a sentencing hearing on June 20, 2005. (C. 4). The State presented evidence that Jackson had two previous murder convictions from Alabama and a third felony conviction of robbery from New York. (C. 27, 29; R. 145–47). The court sentenced Jackson to life in prison without the possibility of parole, in accordance with the Habitual Felony Offender Act, ALA. CODE § 13A-5-9. (C. 4; R. 153).

Jackson appealed to the Alabama Court of Criminal appeals, raising two issues on appeal: that the trial court erroneously consolidated the two robbery charges for trial and that the court erroneously sentenced him to life in prison without the possibility of parole as a habitual offender because there was not sufficient evidence proving the three prior felony convictions for purposes of enhancement. (Doc. 5 Exh. B). On May 19, 2006, the Alabama Court of Criminal Appeals issued a memorandum opinion affirming Jackson's conviction. (Doc. 5 Exh. D). As to Jackson's first issue, the Court of Criminal Appeals noted that "the record contains no indication as to whether either the State or Jackson moved to consolidate the charges for trial purposes, or if the court did so on its own initiative," and that it appeared Jackson either moved to have the charges consolidated for trial purposes or at least consented to it. (Doc. 5 Exh. D at 2). The Court noted that because there was no

---

[3]Citations to "R. __" are to the page number in the court reporter's transcript of the trial proceedings in the state court. The transcript is found at Doc. 5-3 through Doc. 5-5. Doc. 5-3 includes R.1 to R.121. Doc. 5-4 includes R.122 to R.155. Doc. 5-5 includes R. Supp. 1 to R. Supp. 7.

objection to consolidation, that issue was not properly before the court on appeal. Moreover, even had the issue been presented, the Court found that Jackson could not show reversible error because there was no showing of compelling prejudice in the consolidation. (*Id.* at 3). The Court particularly noted that the jury had acquitted Jackson of one of the consolidation charges, stating that "[i]t is counterintuitive to argue that the jury somehow considered evidence regarding an act for which Jackson was acquitted to convict him of a separate act." (*Id.*). The Court further found that Jackson's second issue was not preserved for appeal because the arguments presented on appeal were not the same arguments presented to the trial court. (*Id.* at 4). Jackson applied for rehearing with the Alabama Court of Criminal Appeals, which denied his application on June 16, 2006; the Alabama Supreme Court denied his petition for writ of certiorari on October 13, 2006. (Doc. 5 Exhs. E, F).

On September 28, 2007, Jackson mailed a petition for post-conviction relief in the state trial court, pursuant to Rule 32 of the *Alabama Rules of Criminal Procedure*; it was filed by the Jefferson County Circuit Clerk on October 11, 2007. (Doc. 5 Exh. G). In Ground One of his Rule 32 petition, Jackson claimed that his trial counsel was ineffective for not objecting to the consolidation of the robbery charges. (*Id.* at 30). In Ground Two, Jackson claimed that his trial counsel was ineffective for not moving to sever the charges after they were consolidated. (*Id.* at 33). In Ground Three, Jackson argued that his trial counsel was ineffective for not objecting to the use of the New York robbery conviction for enhancement of his sentence. Specifically he argued that his trial counsel failed to object to the State's failure to give proper notice of its intent to use the conviction, the State's failure to prove that the out-of-state conviction would have constituted a felony in Alabama; the State's failure to authenticate the documents, and the State's failure to prove that he was represented by counsel or waived counsel at the time of the conviction. (*Id.* at 34–35). As Ground

3

Four, Jackson argued that his trial counsel was ineffective by failing to object to the prosecution eliciting testimony of collateral crimes and wrongdoings. (*Id.* at 37). In Ground Five, Jackson argued that his trial counsel was ineffective for not making a *Baton* objection to the prosecution's use of its peremptory strikes. (*Id.* at 40). In what he labels Ground Five(A), Jackson claimed that his trial counsel was ineffective for failing to request a jury charge on the lesser-included offense of third-degree robbery. (*Id.* at 42). In Ground Six, Jackson argued that his appellate counsel was ineffective for failing to raise the aforementioned claims of ineffective assistance of counsel. (*Id.* at 45). Finally, in Ground Seven, Jackson claimed that the trial court was without jurisdiction to render judgment or impose a sentence because the State failed to prove that his New York conviction would have constituted a felony under Alabama law or that he was represented by counsel or had waived counsel when convicted. (*Id.* at 46).

    On November 21, 2007, the trial court denied Jackson's Rule 32 petition. (*Id.* at 3–7). Jackson appealed that denial to the Alabama Court of Criminal Appeals, but it affirmed in a memorandum. (Doc. 5 Exh. J). The court found that Jackson's petition failed to sufficiently plead matters showing that he was entitled to post-conviction relief under *Strickland v. Washington*, 466 U.S. 668 (1984). (Doc. 5 Exh. J 4–8). The court also found that because Jackson failed to meet his showing that trial counsel was constitutionally ineffective, he failed to show that appellate counsel was constitutionally ineffective. (*Id.* at 9). Finally, the court concluded that Jackson failed to show error in the use of his previous New York conviction for enhancement under Alabama's Habitual Felony Offender Law. (*Id.* at 10). The court noted that Jackson never asserted that the New York felony would not have been a felony under Alabama law nor did he assert that he was not represented by counsel; he merely asserted that the prosecution had failed to prove these matters. (*Id.* at 10).

Furthermore, Jackson had admitted to the New York conviction at sentencing. (*Id.*). Jackson applied for rehearing with the Alabama Court of Criminal Appeals, which denied his application on December 5, 2008; the Alabama Supreme Court denied his petition for writ of certiorari on March 6, 2009. (Doc. 5 Exhs. K, L).

Jackson has now timely petitioned for habeas relief in this court pursuant to 28 U.S.C. § 2254.  Jackson asserts the same eight grounds for relief pressed in his Rule 32 petition. (§ 2254 Pet.).  The State has filed a response in opposition.  (Doc. 5 ("State Brief")).  After advising Jackson that the action appeared ripe for summary disposition, the court gave him an opportunity to file any additional evidence or argument in support of his claims. (Doc. 6).  Jackson accepted that invitation, filing a reply brief.  (Doc. 8, ("Pet. Reply")).  Jackson's § 2254 petition is thus ripe for review.

## II.   DISCUSSION

### A.   Section 2254 Review Standards

A federal district court is authorized to entertain an application for a writ of habeas corpus filed by a person in custody pursuant to the judgment of a state court on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a). In reviewing a federal claim on the merits, the scope of review under § 2254 is ordinarily limited significantly by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996); *see* 28 U.S.C. § 2254; *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000). Where a claim was adjudicated on the merits in state court, habeas relief under § 2254 is precluded unless the state court's adjudication of the claim resulted in a decision that was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or (2) "based on an unreasonable

5

determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Further, factual determinations by state courts are presumed correct, subject to being rebutted only upon a showing by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has explained that "[a] state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams*, 529 U.S. at 405; *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)). The Supreme Court has likewise stated that "[a] state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Id.* (citing *Williams*, 529 U.S. at 405; *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)). The phrase "clearly established Federal law" in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of the decisions of the United States Supreme Court, in precedent issued at the time the state court rendered its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Yarborough v. Alvarado*, 541 U.S. 652, 660-661 (2004); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003); *see also Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998) ("[A] district court evaluating a habeas petition under § 2254(d) should survey the legal landscape at the time the state court adjudicated the petitioner's claim to determine the applicable Supreme Court authority" (internal quotation marks and citation omitted), overruled on other grounds by *Williams*, as stated in *Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001)). By contrast, "clearly established Federal law" does not include decisions of lower courts. *Berghuis v. Smith*, ___ U.S. ___, 130 S. Ct. 1382, 1388 (2010); *Renico v. Lett*, ___ U.S. ___, 130 S. Ct. 1855, 1865-66 (2010).

"AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico* 130 S. Ct. at 1862 (citations and internal quotation marks omitted). For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 785 (2011) (quoting *Williams*, 529 U.S. at 410 (emphasis original)). "Indeed, 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Renico*, 130 S. Ct. at 1862 (quoting *Williams*, 529 U.S. at 411). Rather,

> [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). . . . "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (internal quotation marks omitted).

*Harrington*, 131 S. Ct. at 786. Likewise, "a state-court factual determination is not unreasonable [for purposes of § 2254(d)(2)] merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, ___ U.S. ___, 130 S. Ct. 841, 849 (2010). "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the [state] trial court's . . . determination.'" *Id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341-342 (2006)).

    B.    **Claims Alleging Ineffective Assistance of Counsel**

        1.    ***Strickland* Standards**

7

Seven grounds for relief in Jackson's § 2254 petition are based on allegations that his attorney provided constitutionally ineffective assistance. The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defence." U.S. Const. amend VI. "It has long been recognized that the right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970); *see also Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). A claim of ineffective assistance of counsel can be established upon a showing that the (1) "counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense" because the "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. In a habeas corpus action, the petitioner generally carries the burden to establish both components. *Lawhorn v. Allen*, 519 F.3d 1272, 1293 (11th Cir. 2008) (citing *Atkins v. Singletary*, 965 F.2d 952, 958-59 (11th Cir. 1992)).

The Eleventh Circuit has explained:

> To establish a constitutionally deficient performance, the defendant must "identify the acts or omissions ... that are alleged not to have been the result of reasonable professional judgment" to "show that counsel's representation fell below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 687, 690. The "highly deferential" reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689, and recognize that cases warranting the grant of habeas relief based on an ineffective assistance claim "are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quotation and citation omitted). ... "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689. ... Because "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight," *Bell v. Cone*, 535 U.S. 685, 702 (2002), we must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

8

*Lawhorn*, 519 F.3d at 1293-94.

Once constitutionally deficient performance is established, the petitioner generally must also prove prejudice. To do so the petitioner must convince the court "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. While a petitioner need not show that counsel's deficient conduct "more likely than not altered the outcome of the case," it is not enough for the petitioner to show that counsel's errors merely had "some conceivable effect on the outcome of the proceeding." *Id.*, 466 U.S. at 693. A court may decline to reach the performance prong if convinced that the prejudice prong cannot be satisfied in any event. *Boyd v. Allen*, 592 F.3d 1274, 1293 (11th Cir. 2010). Likewise, a court may dispense with analysis of the performance prong if it determines that the prejudice prong cannot be satisfied. *See Strickland*, 466 U.S. at 697; *Rose v. McNeil*, 634 F.3d 1224, 1242 (11th Cir. 2011).

### 2. Failure to Object to the Consolidation of the Charges for Trial and Failure to Move to Sever the Charges After Consolidation

Jackson's first two claims are that his counsel was ineffective because he failed to object to the trial court consolidating the charges for trial without first providing notice and an opportunity to be heard, and that he failed to move to sever the charges after learning that the charges were being tried together. He states that there was no evidence that the state or the court filed a motion to consolidate the charges, that a hearing was held, or that the defense was given an opportunity to be heard. Further, he argues that the offenses were not of the same conduct or otherwise connected that and that if the trials were severed, evidence relating to both cases would not have been admissible.

9

As noted above, the court must apply a "strong presumption that . . . under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Rule 13.3 of the *Alabama Rules of Criminal Procedure* provides for the consolidation of two or more offenses if they are of the same or similar character, are based on the same conduct, or are part of a common scheme or plan. Jackson would not automatically have been entitled to a severance even if his attorney had asked. Whether to grant severance is left to the discretion of the trial court. *See* ALA. R. CRIM. P. 13.4 ("The trial may order separate trials for the offenses if it appears the defendant will be prejudiced by the joinder of the offenses."); *James v. State*, 681 So.2d 269 (Ala. Crim. App. 1996) ("The granting of severance rests within the discretion of the trial court . . . ."); *see also Bogan v. Thompson*, 365 Fed. Appx. 155, 158 (11th Cir. 2010) (holding that an attorney was not ineffective even when attorney realized after trial that "he probably should have filed a Motion to Sever"). The offenses consolidated were similar in that they occurred within a short period of time, within a relatively small geographical area, and were committed in the same or a similar manner. Jackson's argument that the facts were different because one business was a grocery store and the other was a gas station is without merit. He has not shown that consolidation was improper based on the facts of the two cases. Furthermore, Jackson has not made a showing of prejudice from the consolidation of the two cases, particularly in light of the fact that he was acquitted of one of the charges. *See Strickland*, 466 U.S. at 694. Jackson is not entitled to relief on these claims.

### 3. Failure to Object to use of Prior Robbery Conviction

Jackson next argues that his trial counsel was ineffective for failing to challenge the use of Jackson's prior conviction for Robbery Second Degree from New York to enhance his sentence under the Habitual Felony Offender Act. He argues that the State failed to give notice of its intent

to use the conviction, it failed to prove that the conviction would have constituted a felony in Alabama, it failed to prove the documents were authenticated, and it failed to prove that he was represented by or waived counsel prior to the earlier conviction. As an initial matter, Jackson provides only conclusory allegations regarding his assertions. However, even if he were to have properly pled this claim, his claim fails.

Ordinarily the state bears the burden of proving a valid prior conviction in which the petitioner was either represented by counsel or waived counsel. *Givens v. State*, 891 So.2d 907, 951 (Ala. Crim. App. 2003). However, "[w]hen an accused admits prior felony convictions, they are deemed proven for purposes of § 13A-5-9, Code of Alabama 1975." *Allen v. State*, 988 So.2d 615, 617 (Ala. Crim. App. 2007) (citing *Brown v. State*, 754 So.2d 371, 372 (Ala. Crim. App. 2000)). It is clear from the record that Jackson's trial counsel had full notice that the State intended to use the out-of-state conviction for enhancement. (R. 145–46). Furthermore, at sentencing, Jackson's attorney objected to the use of the prior conviction as hearsay (R. 148–49) and once the Court allowed it to be introduced, Jackson acknowledged the prior conviction was his from New York (R. 151–52). Thus, the Alabama Court of Criminal Appeals found that because Jackson admitted to his prior conviction during his trial, both the State's notice requirement and its burden to prove the prior conviction were eliminated. *Glass v. State*, 627 So.2d 1098, 1099 (Ala. Crim. App. 1993). Therefore, any objection by trial counsel on these grounds would have been baseless. *Bearden v. State*, 825 So.2d 868, 872 (Ala. Crim. App. 2001) ("[C]ounsel could not be ineffective for failing to raise a baseless objection."); *see also Strickland*, 466 U.S. at 692–94. This claim is due to be denied.

### 5.     Failure to Object to the Prosecution Soliciting Testimony

Jackson's fourth claim is that his trial counsel was ineffective when he failed to object to

what he contends was improper 404(b) evidence and evidence of Jackson's assertion of his right to remain silent when questioned by authorities. He contends that when examining an investigating detective, the State elicited testimony that he was involved in the theft of a car, and that his counsel further explored the evidence on cross-examination. Jackson also argues that the State improperly asked the detective whether he had interviewed Jackson prior to arrest for the robberies, which Jackson argues violates his right to remain silent.

The record does not support Jackson's assertions. The investigating detective testified on how Jackson became a suspect in the various robbery cases. (R. 37–42). He stated that he received information about a nickname and, during the course of several investigations that included a report of a borrowed car that had not been returned, he was able to make a photo lineup. (*Id.*). Although the detective stated that, during the course of these investigations, Jackson was developed as a suspect, he never stated that Jackson had committed a theft. (*Id.*). All references to the car stated that the car was borrowed; no references were made to it being stolen or otherwise obtained by illegal means. (*Id.*). Since the testimony elicited was not improper, any objection to this line of questioning would be baseless. "[C]ounsel could not be ineffective for failing to raise a baseless objection." *Bearden v. State*, 825 So.2d 868, 872 (Ala. Crim. App. 2001); *see also Strickland*, 466 U.S. at 692–94. Similarly, the cross-examination of this testimony is not improper.

Jackson also argues that his attorney questioned the detective about when and where the detective first interviewed him. The detective was asked if Jackson was in jail when he finally located him; the detective responded "yes." (R. 62). The detective then stated that Jackson invoked his right to remain silent and his rights were respected. (*Id.* at 62–63). The court quickly stopped the line of questioning, stating, "I believe we're intruding on some touchy grounds here." (*Id.* at 63).

12

Jackson has not shown how this line of questioning was prejudicial to him, especially considering the fact that the judge quickly stopped the questioning before any improper evidence or testimony was admitted. Nevertheless, Jackson cites to *Doyle v. Ohio*, 426 U.S. 610 (1976), which holds that the use of post-arrest, post-Miranda silence for impeachment purposes violates the due process clause. In *Doyle*, a prosecutor attempted to impeach a defendant who was arguing his innocence for the first time at trial by questioning him as to why he didn't give that story to the police after he had been Mirandized. *See Doyle v. Ohio*, 426 U.S. 610, 614 n.5 ("Q. (By the prosecutor.) . . . You are innocent? A. (By Doyle.) I am innocent. Yes Sir. Q. That's why you told the police department and Kenneth Beamer when they arrived . . . about your innocence? A. . . . I didn't tell them about my innocence. No.") (internal quotation marks omitted). The circumstances in *Doyle* are not present here; Jackson's allegation that there was an impermissible comment on his invocation of his right to silence is not supported by the record. He cannot overcome the presumption that his trial counsel's choices were sound trial strategy.

### 5. Failing to Make a Batson Objection

Jackson next argues that his trial counsel was ineffective when he failed to make an objection under *Batson v. Kentucky*, 476 U.S. 79 (1986), to the prosecution's use of its peremptory strikes to remove African Americans from serving on the jury. He also argues that counsel should have objected to what he purports to be a systematic exclusive of citizens with disabilities in violation of *Taylor vs. Louisiana*, 419 U.S. 522 (1975).

The record does not contain the names and race of the jurors, nor does it contain the strike list of counsel. Jackson requests post conviction discovery, seeking the name, race, and geographical location of the venire from which his jury was chosen, and a copy of the strikelist of counsel so that

13

he can present evidence to meet his burden of proof with respect to this claim. He is not entitled to such discovery. A habeas petitioner "ordinarily possesses, or has access to, the evidence necessary to establish the facts supporting his collateral claim; he necessarily became aware of them during the course of the criminal prosecution or sometime afterwards." *Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011) ("The evidence supporting an ineffective assistance of counsel claim is available following the conviction, if not before. Whatever the claim, though, the petitioner is, or should be, aware of the evidence to support the claim before bringing his petition."). Jackson was present at his own trial and yet fails to provide any evidence regarding any specific juror stricken to which his counsel should have objected. Aside from a conclusory statement that "all Black people were systematically excluded from his petit jury" and that "there were no handicap/disabled people among the jury venire nor his petit jury," Jackson provides no explanation for why he think the State's strikes were racially motivated nor does he provide any evidence supporting what he alleges to be a "systematic exclusion" of citizens with disabilities. *See U.S. v. Edwards*, 2000 WL 206404, at *3 (S.D. Ala. 2000). Further he has not provided evidence regarding how any objection to such strikes would have likely impacted the outcome of his trial. The Alabama Court of Criminal Appeals found that "[t]his claim is little more than an insufficiently-pleaded fishing expedition." This claim is without merit.

### 6. Failure to Request a Jury Charge on Third-Degree Robbery

Jackson argues that his counsel was ineffective when he failed to request that the jury be charged on the lesser included offense of third degree robbery. He states that there was conflicting evidence regarding whether he was armed with a gun at the time of the commission of the offense. In his trial, one witness testifies that Jackson was armed with a weapon when he committed the

robbery (R. 84); a second witness, present at the store but in a different part of the store, testified that she did not see a gun (R. 81–82). No witness testified unequivocally that Jackson was unarmed.

In his reply brief, Jackson appears to argue that an instruction on third-degree robbery is mandatory in order for a defendant to be convicted of first-degree robbery in Alabama. This argument is without merit. *See, e.g.*, *Warren v. State*, 35 So.3d 639, 640, 643 (Ala. 2008) ("The jury found [defendant] guilty of first-degree robbery . . . . An instruction on third-degree robbery was not required under the facts here. The trial court did not err when it failed to instruct the jury on the lesser-included offense of robbery in the third degree."). Instead, "[a] defendant is entitled to a charge on a lesser-included offense if there is any reasonable theory from the evidence that would support [his theory of the case]." *Ex parte Oliver*, 518 So.2d 705, 706 (Ala. 1987). "[A] charge on a lesser-included offense is *not* required if there is no 'reasonable theory from the evidence that would support' giving that instruction." *Ex parte Smith*, 756 So.2d 957, 963 (Ala. 2000).

Robbery First Degree requires that the defendant be "armed with a deadly weapon or dangerous instrument," ALA. CODE § 13A-8-41; Robbery Third Degree requires only that the person "[u]ses force," *id.* § 13A-8-43. The state courts found that there was no rational basis from which the jury could have found that Jackson was unarmed. They found that since Jackson's defense at trial was that not that he was unarmed, but rather that he was not the perpetrator, a request for a Robbery Third Degree jury instruction would have been inconsistent with his trial defense. Jackson has not shown that the state court's conclusion that this was a sound trial strategy is an unreasonable application of the *Strickland* standard. *See Bell v. McNeil*, 353 Fed. Appx. 281, 286 (11th Cir. 2009); *Sabillo v. Sec'y, Dept. of Corr.*, 355 Fed. Appx. 346 (11th Cir. 2009) (citing *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir.2005) ("It is a fundamental principle that state courts are the final

arbiters of state law, and federal habeas courts should not second-guess them on such matters. " (quoting *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir.2005)))). The court will not fault counsel for failing to request a jury instruction to which Jackson was not entitled. *See Sabillo*, 355 Fed. Appx. at 349 (citing *Strickland*, 466 U.S. at 692–94); *Bearden*, 825 So.2d at 872.

### 7. Appellate Counsel Ineffectiveness

Jackson also claims his appellate counsel was ineffective for failing to raise the aforementioned claims of ineffective assistance of his trial counsel. The Due Process Clause guarantees Jackson "the effective assistance of counsel on a first appeal as of right." *See Evitts v. Lucey*, 469 U.S. 387, 392–405 (1985). "The standards for determining whether appellate counsel was ineffective are the same as those for determining whether trial counsel was ineffective." *Jones v. State*, 816 So.2d 1067, 1071 (Ala. Crim. App. 2000). In the appellate context, Jackson has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "Winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). The appellate "attorney need not advance every argument, regardless of merit, urged by the appellant . . . ." *Evitts*, 469 U.S. at 394.

Furthermore it is well settled that "it is neither reasonable nor practical to expect newly appointed appellate counsel to raise an ineffective-assistance-of-trial-counsel claim without the benefit of a trial transcript to document and support a defendant's allegations as to what occurred during trial." *Brown v. State*, 903 So.2d 159, 163–64 (Ala. Crim. App. 2004) (citing *V.R. v. State*, 852 So. 2d 194, 202–03 (Ala. Crim. App. 2002)); *see also Ellis v. Hetzel*, 2011 WL 798402, at *9

(M.D. Ala. 2011). It is clear from the record and Jackson's petition that Jackson was sentence on June 20, 2005. His appellate counsel was appointed the same day. (R. 6, 145). The direct appeal record was not certified as complete and served on the parties until September 29, 2005, more than three months later. Because the record of Jackson's trial was not prepared in time for appellate counsel to reasonable present a timely challenge to trial counsel's performance, appellate counsel was not ineffective for not raising such a claim in a motion for a new trial and then on direct appeal. *See Ellis*, 2011 WL 798402, at *9. Having determined that Jackson's trial counsel was not ineffective, the court similarly cannot and does not find that his appellate counsel was ineffective. *See Jackson v. Terry*, 2011 WL 2974306, at *6 (M.D. Ga. 2011). This claim is without merit.

### C. Jurisdictional Claim

In his final ground for relief, Jackson argues that the trial court lacked jurisdiction to impose an enhanced sentence on him as a habitual offender because the State failed to prove his out-of-state conviction was a felony under Alabama law or that he was represented by counsel or had waived counsel during that prior conviction. The validity of the New York conviction and the merits of Jackson's argument for its exclusion have already been addressed. *See supra* Part II.B.3. Given that the prior conviction was valid, the sentence of life without parole in this case was proper. This and all above claims are due to be denied.

### III. CONCLUSION

Based on the foregoing, Jackson's § 2254 habeas petition is hereby DENIED and this action is DISMISSED WITH PREJUDICE. A separate final judgment will be entered.

DONE, this 2nd day of October, 2012.

_____
SENIOR UNITED STATES DISTRICT JUDGE